THE NORWEGIAN PLOW COMPANY, PLAINTIFF IN ERROR, v. JOSEPH A. HAINES ET AL., DEFENDANTS IN ERROR.

Conversion: There being evidence of facts constituting a conversion of the property of the plaintiff by the defendants and the same having been fairly submitted to the jury by proper instructions, a verdict and judgment for the plaintiff upheld.

ERROR to the district court for Douglas county. Tried below before WAKELEY, J.

*O. P. Mason*, for plaintiff in error.

*Groff, Montgomery & Jeffrey*, for defendants in error.

COBB, J.

The plaintiff in error had recovered several judgments against one Fred Fischer, amounting in the aggregate to about $1,000, in justices' court, in Knox county. Execu-

44

tions were issued thereon, and placed in the hands of the sheriff. The sheriff, by his deputy, proceeded to levy said executions on the goods and chattels of said Fischer, who was engaged in the agricultural implement business at Creighton, in said county. It appears that Fischer had in his store, or shed adjoining thereto, a quantity of agricultural implements of his own, and also a quantity of the same general character of goods belonging to the defendants in error, which he held on commission. There is considerable conflict in the evidence as to what the deputy sheriff did by virtue of his said writs, in respect to that part of the said property which confessedly belonged to the defendants in error, but they claim that he levied upon the whole, and actually sold a part of it. This conflict in the evidence will be hereafter referred to.

The defendants in error brought this action in the district court of Douglas county, against the plaintiff in error, together with one Mower, their managing agent, and Reuben Bollman, sheriff of Knox county, for the conversion of that part of said property belonging to them, of the alleged value of $1,124. The answer consisted of a general denial.

There was a trial to a jury, with a verdict and judgment for the plaintiffs. The cause is brought to this court on error. Nine errors are assigned in the petition in error, all of which are not strictly followed up, nor insisted on, in the brief of counsel.

Adhering to a rule often laid down by this, as well as other courts, I will discuss those points only which are urged in the brief, remarking at the same time that there was no oral argument of the case.

The first point presented is, that "When the officer presented his executions and announced his intention to levy on said Fischer's goods, Fischer made no objection, or in any way manifested a desire to prevent the levy being placed on the Haines Bros.' goods," etc., with the conclusion

that under such state of facts the plaintiffs below cannot recover.

This point presents a question of pleading, as well as one of law applicable to the evidence. As already stated, the petition charges the conversion of the goods by the defendants. The answer is a general denial. This put in issue two facts only; that of the ownership of the goods by the plaintiffs, and their conversion by the defendant. Had the defendant relied upon the conduct of the plaintiffs' agent, or bailee, as giving a license, or creating an estoppel, such conduct should have been set up in the answer as a special ground of defense. This view is fully sustained by the authority of the three Nebraska cases cited by counsel for defendants in error.

*Second.* That the trial court "allowed testimony to be introduced to show what was said by the officer when he came to levy the executions, but before the levy was made, as to what he intended to levy on."

Under this head I will quote from the abstract the evidence of the witnesses, as well on part of the plaintiffs as the defendant, so far as it bears directly upon what was said and done by the officer in making the levy.

First as to the evidence of Fred Fischer:

"Friday, Feb. 29, deputy sheriff came to my office; stated that he had in his possession five executions against me, in favor of the Norwegian Plow Company, and that he levied upon the building my office was in, all the contents in the building, and everything on the premises—he took possession of the premises and the contents of the safe. There were present, Mr. Fox, attorney for the company, and Mr. Mower, representative of plow company."

George L. Fischer testified: "I was present when deputy sheriff came to make levy. He said he had five executions in favor of Norwegian Plow Company, against Fred Fischer. That he attached that building, in which Fischer was doing business—everything in it, and everything on the premises."

On the contrary, witnesses for the defendants testified as follows :

E. B. Mower: "Am one of the defendants. Know plaintiffs. I was present when the levy was made on the goods of Fischer. I remember exactly what he said, which was, 'I take into my possession all the things belonging to Fred Fischer or that he has any title in.' After that I went to desk, and saw by the looks of things that some of the goods belonged to Haines Bros., and were held on commission ; told sheriff to get his men and separate the goods from the others so there would be no trouble about them. Knew we could not hold them ; had no idea of trying to. We didn't take a dollar's worth of Haines Bros.' goods that I know of. We found quite a number of plows, etc., lying out under an open shed and frozen into the mud. We had to get an axe to take them out. Every article that I knew of belonging to Haines Bros. was taken out and all put together in one place and kept separate. The goods we took were the goods Fischer had got from us, the Norwegian Plow Company. The shed was a flimsy affair, just a 'lean-to' against a building and open at the side and end. We separated the goods, putting those we took in one pile and Haines Bros.' in another. We moved these goods, some of them, about twenty-five feet, some only the length of them. As soon as goods were sorted and inventory made, I came down to Omaha and informed Haines Bros. Fischer never said anything to me about the goods; I heard him saying to Rothwell about the Haines goods, and I told Rothwell he had nothing to do with those goods at all, not to touch them, only to move them out of the way ; we only wanted the goods belonging to Fischer. Young Fischer came and demanded the Haines Bros.' goods from Rothwell. I told him 'We haven't got anything to do with those things, you can take them.' He said, 'You have got my building; what am I going to do about it?' The building was

Fischer's.   The sheriff told them that they couldn't take anything away until after the inventory; then they could have them all; that he had to sort them out to make the inventory, and he didn't want anything only what Fischer had an interest in.   I told them we did not want the commission goods, and as soon as we sorted the others out, they could have the balance.   The goods were handled in first-rate shape.   Nothing scratched or injured; they were not injured five cents' worth.   I was there helping all the time and saw."

W. L. Rothwell : " Was deputy sheriff of Knox county on February 29th, 1884; levied the executions against Fred Fischer; told him I levied on all property belonging to Fred Fischer, and any property he had any interest in.   The property was under open sheds; all plows were frozen in the ground, balance covered with snow.   Goods were all together when I went there.   I didn't know one party's goods from another.   Mr. Mower separated the commission goods from the other.   He spoke particularly of Haines Bros.' goods, and said he didn't want to get hold of any of them.   I told him we had better put the Haines Bros.' goods out by themselves, so when we come to sell we could take care of them.   I had a watchman to take care of both piles.   Some goods were outside when we went there.   The only demand George Fischer ever made on me was as follows: I was going by his attorney's office one day and he came running down-stairs and shoved a paper into my face, saying, ' Release those goods.'   I said, ' What goods?'   He said, ' Those goods.'   I said, ' I don't release any goods until after I have made a correct inventory.'   He did not hand me the paper, but went back upstairs.   I did not read paper; had no opportunity to do so.   This occurred while I was taking inventory.   I never removed these goods from the premises.   They came to me several times and wanted me to take care of them.   The goods I took appear in my return on the executions."

The conflict in the above evidence consists chiefly in the words used by the levying officer. Counsel say in the brief that under some circumstances these declarations might become a part of the *res gestœ.* According to the evidence of the witnesses of defendant in error, the words were a part of the act of the levy, hence a part of the *res gestœ.* This point runs almost imperceptibly into the

*Fourth,* which is, " That neither the officer nor the agent of the plaintiff in error had any intention of taking Haines Bros.' goods on the execution," etc.

As a general proposition I think that a conversion of property is not a question of intention, but of fact, and yet in the case at bar if it was the *bona fide* intention of the officer and of the agent of the plaintiff in error only to take sufficient control of Fischer's store to enable them to separate the goods belonging to Fischer from those belonging to others who had made him their commission merchant, in respect thereto, to the end that the officer might complete the levy of his execution upon the former, and such intention governed their conduct throughout the transaction, and could be shown and proven by their acts and other circumstances, it would have amounted to a defense. Such, as near as I can gather from the abstract, was the view of the trial court. But this presented a question, or questions, peculiarly proper for a jury, and, if presented to them by proper instructions, their verdict must be final.

Under the assignment which we are now considering the plaintiff in error complains of the giving of the 7th instruction. I incline to the opinion that this instruction, taken alone, is open to objection, but when considered in connection with those which immediately precede and follow it, it expresses the law as applicable to the evidence. I quote the 5th, 6th, 7th, and 8th instructions :

" 5. If you find that any of the plaintiffs' goods were actually sold at the execution sale, whether by design or

through mistake, the plaintiffs' right to recover therefor is clear and undoubted.

"6. As to such as were not sold, you will inquire and determine whether or not the sheriff by his deputy levied upon them. If he did make a levy upon them within the definition and according to the test about to be given to you, then the plaintiffs are entitled to recover for such as were levied on, as well as for those, if any, which were sold.

"7. If you should find from the evidence that the goods in controversy, or a part of them, were within a building occupied by Fischer; and that the deputy sheriff declared that he levied upon all the property within the building; and that he thereupon took possession of plaintiffs' property and reduced it to his control and dominion, with the purpose and intent of perfecting his levy thereon and subjecting it to his execution, those acts would amount to a conversion of the goods, and entitle plaintiffs to recover, although the levy might have been abandoned thereafter.

"8. If, however, the plaintiffs' goods were intermingled with those belonging to Fischer in such a way that it was necessary for the deputy to take temporary possession of the whole for the purpose of separating them, and he took such possession and held it for that purpose for a sufficient time only to accomplish it, not doing or intending to do any acts for the purpose of levying on plaintiffs' goods, or subjecting them to his executions, this did not amount to a levy upon or conversion of any goods not actually sold or appropriated."

These instructions, I think, fairly presented to the jury the conflicting evidence of the Fischers on the one side, and of W. L. Rothwell, the deputy sheriff, and E. B. Mower, the agent of the plaintiff in error, on the other, as to the disputed facts in the case. As above stated, these facts presented a proper case for the consideration of the jury, and together with the undisputed fact that two plows and two harrows, the property of the defendants in error,

were actually sold by the sheriff on the executions of plaintiff in error against Fischer, I think fully sustain the verdict and judgment.

The judgment of the district court is therefore affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.